PHILADELPHIA COUNTY.

JANUARY TERM, 1882, No. 321.     JANUARY 8, 1883.

## Boswell's Appeal.

1. A mortgage was given to secure a bond to A and E conditioned for the payment of $5,000 " at the expiration of ten years from the date thereof," with interest payable half yearly to T, and in case of the death of T before the expiration of the ten years, the interest to be paid to the obligees. The consideration for the bond and mortgage was the sale of certain real estate in which T had a life estate. Before the expiration of the ten years, the mortgagors and the assignee of the mortgagees, entered into an agreement which recited that T had, for a good consideration, released to the mortgagors all of her interest, and provided that the mortgage should " be considered and taken as now due and owing," that all questions in dispute should be submitted to three arbitrators, that the award of the arbitrators or a majority of them should be final and conclusive, that the award should determine the present value of the interest of the assignee and the amount owing to him, and should take into consideration the value of the interest of T, then released to the mortgagors. It further provided that the mortgagors should pay the costs of the arbitration and make a deposit for the purpose, and should give a mortgage to secure the performance of the award. The deposit was duly made and the mortgage given. The arbitrators met and heard the parties, but were unable to make an award, because no two of them could agree upon the sum due. *Held*, that the agreement being founded upon a full and sufficient consideration, and it not being possible to restore the parties to their former position, a court of equity had jurisdiction to give the relief contemplated by the parties when they agreed upon a reference, and to ascertain the amount due upon the mortgage, and decree its satisfaction upon the payment of such amount.

2. In ascertaining the amount due upon the mortgage, the master in the Court below deducted from the sum named in it the value of the life interest of T, as shown by approved annuity tables. *Held*, that this was proper deduction.

3. A, one of the mortgagees, died, having bequeathed all of her interest in the mortgage to E, the other mortgagee, who was living at the time of the suit. The mortgagor was permitted to testify that he had never made any agreement that a due bill made to him by E for advances should not be used as a set-off against the mortgage. *Held*, that he was a competent witness for the purpose.

4. The mortgage recited a promissory note made by the mortgagor to the mortgagees for $2,000, " the said amount having been received by him from them." The note set forth that it was given "as a collateral security " for the sum secured by the bond, and " if the conditions in said mortgage are complied with, then this note to be null and void, otherwise valid." The master found, as a fact, that the note was without consideration. *Held*, that the note being manifestly but collateral to the mortgage, it should, upon the payment of the latter, be surrendered to the maker.

5. The allowance of costs to the defendant is a matter in the sound discretion of the Court below.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Appeal of William L. Boswell from the decree of the Court of Common Pleas No. 4 for the *County of Philadelphia.*

Bill in equity between Evan W. Thomas and Martha G., his wife, complainants, and William L. Boswell and Eliza S. Thomas, respondents. Separate answers were filed by the respondents, and the cause was referred to Silas W. Pettit as master and examiner, who reported the material facts as follows :

In 1864 Evan W. Thomas was seized of an undivided one-half interest, and his sisters, Annie and Eliza S. Thomas, were seized each of an undivided one-fourth interest in a farm called "Oakwood," near North East, Maryland, the whole being subject to a life estate in their mother, Ann Thomas. In 1869, at the suggestion of Evan, and by his advice, the farm was exchanged for a house in Philadelphia. For the sake of convenience, at the suggestion of the attorney who drew the papers, the title was made to Evan as to one half and to Annie and Eliza as to one fourth each, without mention of the interest of the mother. The value of this property over the incumbrances was about $4,000. It was unproductive, and was subsequently exchanged for a farm near Berlin, Maryland. Evan, at this time, offered to take the farm, and to secure to his mother $300 a year for life, and at her death $4,000 ($2,000 to each) to Annie and Eliza, which offer was accepted. The papers drawn did not follow the agreement. Evan executed a bond conditioned for the payment of $5,000 to Annie and Eliza at the expiration of ten years, and for the payment of the interest to Ann Thomas for her life, or for ten years, whichever should be the longer, and, in case of her death, to her daughters. The bond was dated October 1, 1870, and was secured by a mortgage executed by Martha G. Thomas, wife of Evan, upon her one-fourth interest in a tract of fifty-four acres on Grey's lane, Philadelphia. Evan testified that the bond and mortgage was made for $5,000 instead of four, because the $300 annuity to his mother was the interest on that sum, and because he intended upon her death to make his sisters a present of the additional $1,000. After this mortgage had been entered up, it was agreed that it should be satisfied, and another, called "I," was given in lieu of it upon other property by the same parties on the 4th of February, 1871. In order to correspond with

the first mortgage, the second "I" was dated October 1, 1870. The latter mortgage recited as follows:

"Whereas, the said Evan W. Thomas, in and by his certain promissory note, made on the day of the date of these presents, in favor of the mortgagees herein named, for the sum of $2,000, with interest payable in one year from the date thereof, said amount having been received by him from them; and whereas said Evan W. Thomas, . . . in and by a certain obligation, . . . stands firmly bound unto the said Annie Thomas and Eliza S. Thomas in the sum of $10,000, . . . conditioned for the payment of $5,000, . . . at the expiration of ten years from the date thereof, with interest thereon at the rate of six per cent. per annum, payable half yearly unto Ann Thomas, widow of Thomas S. Thomas, deceased; and in case of the death of said Ann Thomas before the expiration of said ten years, the said interest to be paid half yearly unto the said obligees therein mentioned."

The note referred to was as follows:

"PHILADELPHIA, *October 1, 1870.*

Twelve months after date, I promise to pay to the order of Annie Thomas and Eliza S. Thomas the sum of two thousand dollars for value received. This note is given as a collateral security for the payment of five thousand dollars, which sum is secured by bond bearing even date herewith, which bond and this note are both recited in a mortgage of same date on premises in Twenty-seventh ward, containing twenty-four acres. If the conditions in said mortgage are complied with, then this note to be null and void, otherwise valid.

E. W. THOMAS."

The note was without consideration.

In December, 1869, Eliza Thomas gave a due bill to her brother Evan for $1,750, being the amount due to him for sundry advances made by him to her up to that time. August 8, 1873, Annie Thomas died, having bequeathed all of her property to her sister Eliza, and Eliza, in December, 1873, assigned the mortgage to William L. Boswell. The existence of the mortgage was an embarrassment in the partition and sale of the tract of twenty-four acres bound by it. June 3, 1879, the complainants and Boswell entered into an agreement, which recited that Ann Thomas had, for a good consideration given to her by Evan W. Thomas and wife, released to them all of her interest in the mortgage. It provided, *inter alia,* that

the mortgage, "so far as the interest therein of said William L. Boswell as assignee aforesaid is concerned, shall be considered and taken as now due and owing, and we, the said William L. Boswell and the said Evan W. Thomas and Martha G., his wife, do hereby agree to submit to the award of George Tucker Bispham, Solomon M. Cooper, and E. C. Irwin, or a majority of them, mutually chosen by us, all questions in dispute, including all questions of law, equity, and fact, in regard to the said mortgage and the amount now equitably owing as aforesaid thereon, and we hereby respectively bind ourselves to submit to and be finally concluded by the award of said referees or a majority of them, and we furthermore agree that the said referees shall by their award determine and decide what is the present value of the interest of said William L. Boswell as assignee aforesaid in said mortgage, and the amount owing to him as aforesaid from the said Evan W. Thomas and Martha, his wife, and in making such decision, and determining such value, the said referees shall take into consideration the value of the interest held therein by Ann Thomas, now released to the said Evan W. Thomas and wife, as above recited."

Plaintiffs also agreed to pay the expenses of the arbitration, and deposited $100 with the attorneys of the defendant for the purpose. They gave a mortgage in $5,000 to secure the performance of the award, and agreed that, in case of their failure to comply with it within ninety days, "a *scire facias* shall immediately issue."

The arbitrators met and heard the parties, but were unable to make an award, as no two of them could agree upon the sum due upon the mortgage. The complainants then tendered to the defendant $39 44. They arrived at this sum by treating the mortgage as good for the $4,000 originally offered and accepted, deducting from it the value of the life interest of Ann Thomas at $1,278 16, setting off the amount of the due bill and interest, $2,-684 28, and adding to the balance some interest and the costs of satisfaction. This tender was refused, and they then paid the sum named into Court. They thereupon filed their bill, in which they prayed that the defendant be ordered to enter satisfaction upon the record of the said mortgage, and to deliver them up with the two bonds and the $2,000 note.

The answer of the defendant Boswell set forth, *inter alia :*

" When the last-mentioned mortgage, executed February 4, 1871, . . . was being made . . . learning that Eliza

had some time previously given Evan a due bill for some amount which she seemed to have an uncertain and indefinite recollection of, but which it was agreed between them at the time of making the same, was never to be paid by her unless she was able to pay, by reason of anticipated success in music-teaching, I advised that this mortgage should be so drawn that the due bill could not be made a set-off to the amount which Eliza was to receive for her interest in the Broad street property, to wit: $2,500. This matter was duly considered by the parties in interest, and it was agreed that the said due bill was not to be a set-off to Eliza's interest in the mortgage, and the conveyancer was instructed to prepare the mortgage accordingly, and in such a way as to protect Eliza from any claim ever being made against her by way of a set-off on this due bill. In pursuance of this agreement, Evan W. Thomas wrote and signed the note of $2,000, dated October 1, 1870, to be used as a set-off to the aforesaid due bill in the event of said Evans attempting to use the due bill as a set-off to the said mortgage. Before the assignment of the mortgage was made to me, I spoke to him for the purpose of ascertaining positively from him whether he intended ever to make any claim upon this due bill against the said mortgage, I having in view its purchase from Eliza, who was then the owner of the whole mortgage, and asked him whether he intended to claim the said due bill as a set-off to the mortgage, and he replied, in substance, that he would not seek to assert his right of set-off of the due bill against the mortgage, and gave me to understand that there was no necessity of my taking a declaration of no set-off in writing."

The answer of Eliza S. Thomas alleged, *inter alia :*

"There was no additional valuable consideration for the said second mortgage than that given for the first, but, for the purpose of preventing a due bill held by my brother against me from being made a set-off against my interest in said second mortgage, the amount of the second mortgage was increased. This note was given to be used as a set-off to my due bill, held by my brother, in the event that he should attempt to make the due bill a set-off against the mortgage. I was informed, and believed, and now believe, that Evan had agreed, prior to the assignment of the mortgage to Mr. Boswell, that the due bill should not be set-off against the mortgage."

*Evan W. Thomas,* one of the plaintiffs, testified in his own behalf. In the course of his testimony-in-chief, counsel for the defendant objected to his competency,

and moved to strike out so much of his testimony as related to transactions anterior to the death of Annie Thomas, stating that it was by inadvertence that he did not object when the witness was first sworn.

This witness testified in rebuttal:

"Nothing was said by me to Eliza in reference to the due bill at that time. All that was said was said to me by Eliza in her letter of September 10, 1870, in which she states substantially that the due bill would be a set-off to the mortgage. There never was any agreement upon my part but that it should be a set-off to her mortgage."

The master found, *inter alia*, as follows:

"The first question to be answered is whether the plaintiffs can sustain their bill at all. The master is of the opinion that by the agreement of June 3, 1879, above mentioned, the mortgage in dispute must be considered to have become due and payable then, and that, although the arbitrators were unable to come to any conclusion, yet as the plaintiffs had, on the faith of that agreement, provided for the life interest, which all concede Mrs. Ann Thomas had in that mortgage, and have secured her release of the same, and cannot now be restored to their former position, the finding of the Court must be substituted for the expected finding of the arbitrators, and the agreement of the parties, to wit: That the amount due on the mortgage be ascertained, paid, and the same satisfied, carried into effect, etc.

The third question, and one not so easy of solution, is whether or not the plaintiffs have a right to set-off the due bill given by Eliza to Evan for $1,750 against the mortgage now held by Mr. Boswell and the subject of this controversy.

If Mr. Boswell cannot swear on the stand to a positive agreement by Evan not to set-off the due bill, and Eliza can only say she has been informed of such an agreement, there is nothing in the testimony of Mr. Waxler or Mr. Jacquette to shake the testimony of Evan and the letter of Eliza, and the master finds, as a matter of fact, that there was no agreement that the amount of the due bill of Eliza to Evan, dated 31st December, 1869, should not be defalked against the mortgage in dispute.

As matter of law, Mr. Sharp, for the defendants, raised and pressed with much ingenuity several grounds of objection to the allowance of this set-off, viz: that set-off is of purely statutory origin, and is given by our statute to a defendant only, and hence cannot be set up here by a plaintiff, that if admissible on other grounds, it can only

be set up as against Eliza's original one-half interest in the mortgage, because, as to the other half, she was an assignee of her sister Annie's share by will, and that a set-off against an assignee cannot be set up against an assignee of an assignee, citing : Blair v. Mathiott, 10 Wr.', 262 ; Downey v. Tharp, 13 P. F. Sm., 322 ; and, therefore, cannot be set up as against that half interest in the mortgage held by Boswell as assignee of Eliza, who was assignee of Annie ; and it was also urged that as Annie, the assignor, was dead, Evan, as a party at interest, was not a competent witness to attack any interest of which she was assignor.

The master cannot coincide with these views. This is a proceeding in equity in the nature of a bill to redeem, and necessarily involves the ascertainment of the precise amount due on the security to be so redeemed. Defalcation has always existed in equity ; commended by its inherent justice, it was imported from thence into the common law courts by statute, but the statute neither creates, limits, or affects the remedy to be given in equity, and hence can have no application to the case in hand. It is a necessary part of the proceeding here that the amount due upon the mortgage which they seek and have a right to redeem should be ascertained, and it is certainly competent for the plaintiffs to deduct the amount they have already advanced on account thereof as against a holder who took, whether for value or not does not appear, but certainly and confessedly with full knowledge both of the advances and of the fact that they were to be deducted.

That Evan W. Thomas is a competent witness is apparent when it is remembered that he seeks no set-off as against Annie, who is dead, and makes no claim as to her, nor testifies to anything concerning her, but only to payments made to Eliza, who is living and has not disputed them ; he is not within the spirit of the act, and it would be an unwarranted extension of the letter of the proviso to the act of 1869 to hold that where plaintiff sues on a security acquired from one who has since deceased, the defendant's mouth is shut to prove a debt due him by the assignee, which is the necessary result of the defendant's contention ; it would seem to be unnecessary to do more than state the proposition.

Again, the rule invoked that the debt of an assignee cannot be set-off against his assignee has no application to this case. As before said, this is a bill to redeem, and Mr. Boswell can in equity claim no higher right than his

assignor had at the time of her assignment to him, more especially when he had full knowledge of what that right exactly was at the time he took the assignment. In December, 1873, Eliza Thomas could have claimed of Evan, had the mortgage been then due, the sum of $5,000, less the amount he had already paid her on account, and of which Mr. Boswell had knowledge, and she could give and he could acquire no higher or greater right than that. The cases cited on the other side were both at law, and based upon the wording of the statute, which, as we have seen, has no application in equity, and in neither of them had the assignee notice of the counter-claim, which, in this case, he himself admits he had.

The master, therefore, finds that the amount of the due bill for $1.750, with interest, should be deducted from the amount of the mortgage in controversy.

With interest added and credit given for a small partial payment, the exact amount due on the due bill from Eliza Thomas to Evan W. Thomas was on 3d June, 1879, the sum of $2,684 25, (Bill, § XXIII.)

It is to be remembered, too, that in this case the claim of Evan against Eliza is not unconnected with the claim she had against him, and assigned to Mr. Boswell—the several sums which composed the $1,750 for which the due bill was given were rather advance payments on account than a separate debt, and as such were peculiarly the subject of equitable cognizance : 2 Story Eq. Jur., s. 1435 ; Hankey *v.* Smith, 3 Term Rep., 507 ; Lanesborough *v.* Jones, 1 P. Wms., 326 ; Jeffs.*v.* Wood, 2 *Id.*, 129.

And, therefore, in equity Mr. Boswell can be held to have acquired no greater right against Evan than he knew his assignee could give him, to wit : The difference between his mortgage and his advance to her, and this without reference to the peculiar or restricted wording of the statute of defalcations, which applied only to proceedings at law.

The fourth question is as to the deduction, if any, to be made for the value of the life interest of Mrs. Ann Thomas in the income secured by the mortgage.

As already stated, the master is of opinion that the mortgage in controversy is now due by agreement of the parties as of the 3d June, 1879 ; and it follows that the holder of the incumbrance must make deduction for the value of the estate in it of the life-tenant, of which he has been relieved by her release obtained by the plaintiffs. It is manifest that a less sum than $5,000 paid on 3d June, 1879, the interest of which would be presently payable to

him, would be a full compensation to Mr. Boswell for a security for that $5,000, not payable until after Mrs. Thomas' death, and the interest on which in the meantime goes to her. A deduction, therefore, must be made.

The true measure of that deduction is, however, somewhat difficult of ascertainment, but the master has adopted, with some hesitation, the valuation of an annuity of $300 a year to a person of Mrs. Thomas' age on 3d June, 1870, as that deducted.

In Shippen's App., 30 P. F. Sm., 391, the Supreme Court refused to adopt the annuity tables as evidence, and instead adhered to the common law rule of deducting one third as the value of a life-interest, but the Court intimate that they adopt it for that case only, and in view of its peculiar circumstances, but the master would suggest that the deduction of the arbitrary fraction of one third in the case in hand would be unfairly onerous on the holder of the mortgage in dispute, while the general admissibility in evidence of the approved mortality tables, for the purpose of fixing a value on life-interests, has been so often recognized, and is justified by so many reasons, that he has felt it best to adopt it in this case : Mills v. Catlin, 22 Ver., 106 ; How v. How, 48 Maine, 428 ; R. Rd. Co. v. Oaks, 52 Ga., 410 ; Williams' case, 3 Bland, ch. 221.

The case last cited contains a full review of the decisions on the subject, and amply vindicates the propriety of receiving such tables in evidence.

The master took the amount of the mortgage, $5,000, deducted the value of the life-interest of Ann Thomas, $919 56, and the amount of the due bill and interest, $2,684 28, and found a balance with interest and costs of satisfaction of $1,564 12. He then reported a decree that the plaintiffs pay the defendant this balance, and that the defendant, upon receipt of said sum, satisfy the mortgages, and surrender them with the bonds and note for cancelation, and that the plaintiffs pay the fees of the master and examiner, and the costs of Eliza S. Thomas.

To this report the defendant filed exceptions, which the Court, December 27, 1881, dismissed.

The defendant then appealed, assigning that the Court erred in dismissing the exceptions, making the decree, refusing costs to Boswell, and :

" *Fifth*. In finding that, by the terms of the agreement of June 3, 1879, the said mortgage was due when the bill was filed.

*Sixth*. In finding that the plaintiffs below are entitled

to deduct from the amount of the said mortgage the value of Mrs. Ann Thomas' life-estate therein.

*Seventh.* In finding that it was not agreed, when the said mortgage was taken, that the due bill of Eliza S. Thomas should not be a set-off against it.

*Eighth.* In finding that Evan W. Thomas, a party in interest, is a competent witness, when, as is admitted, Annie Thomas, the assignor of the mortgage—'the thing or contract in action'—is dead."

*Sharp & Alleman* for the appellants.

*First.* The answers must be taken to be true unless overcome by the testimony of two credible witnesses, or at least by that of one such witness and strongly corroborating circumstances : Carpenter *v.* Ins. Co., 4 How., 185 ; Audenreid's Appeal, 8 Nor., 114 ; Barclay's Appeal, Leg. Int., 1881, p. 440.

And the principle has peculiar force in this case, because there are two answers under oath denying the material facts upon which the plaintiffs rely.

We say, in the first place, that the agreement failed of its purpose and became impotent when the referees failed to agree ; and, secondly, that if it did not, the Court has no power to make any rebate from the face of the mortgage for the value of Ann Thomas' life-estate.   It is plain, from the reading of the agreement as a whole, that the appellees only desired the mortgage satisfied, and that the appellant consented to an ascertainment of its present value only upon terms.

It should be observed that in this agreement a particular mode of ascertaining the value of the interest of Boswell is prescribed—by the award of referees.   When that is the case, it should be exclusive of all other modes. *Expressio unius est exclusio alterius.*   See Commonwealth *v.* Erie R. W., Leg. Int., 1881, p. 334.

Again, an agreement made for the admitted benefit or accommodation of one of the parties should be construed against him in a doubtful case.

But a construction which involves a want of mutuality in a contract is not to be adopted, except that be its plain meaning.   Now, is it not plain that Mr. Boswell could not have sued out a *sci. fa.* on the new mortgage after the referees had failed to agree ?   He can sue on it only for the amount of the award of the referees when ninety days have passed after the award is made.

Nor could Boswell have maintained any form of action when the bill was filed.   Therefore, even if the Court

should be of the opinion that the agreement of June 3, 1879, has not spent its force, and that it does provide that the mortgage shall be deemed due, yet the referees only have the right, under the agreement, to deduct the value of Mrs. Ann Thomas' life-estate.

Thus far we have argued the matter as if Evan were a competent witness in the cause, but we submit that he is not a competent witness.  He is a party in interest, and, therefore, not a witness at common law : Act of April 15, 1869, s. 1, Purd. Dig., p. 624, pl. 16.

That Annie has no connection with the subject of the set-off is not to the point.  The act does not say that a party to a suit may now testify, except as to matters in which the assignor was interested.  It says he shall not testify in the "action" where the assignor of the thing in action is dead.  Our case is simply one not covered by the act.  The spirit of modern legislation may look in the direction of a party's competency, but that argument does not meet the case : Karns v. Tanner, 16 P. F. S., 305.

*Benjamin H. Haines* and *John M. Washburn* for the appellees.

The answer is only evidence where it is responsive to the bill.  Statements not strictly responsive must be proved *aliunde :* 3 Green Ev., s. 290 ; Eaton's Appeal, 16 P. F. S., 490.

The appellant's argument that Evan is not a competent witness because Annie, the assignor, is dead, is fully answered by the master.

Mr. Justice PAXSON delivered the opinion of the Court, March 5, 1883 :

A careful examination of this record fails to disclose any substantial error.

The most serious question presented is contained in the fifth assignment, which alleges the Court below erred "in finding that, by the terms of the agreement of June 3, 1879, the said mortgage was due when the bill was filed." The agreement expressly stipulates that the said mortgage "shall be taken and considered as now due and owing."  The object of the agreement was to provide for the settlement of certain matters in dispute between the parties, and as a means to this end it was agreed to submit "to the award of George Tucker Bispham, Solomon M. Cooper, and E. C. Irwin, or a majority of them, mutually chosen by us, all questions in dispute, including all questions of law, equity, and fact, in regard to the

said mortgage and the amount now equitably owing as aforesaid thereon, and we hereby respectively bind ourselves to submit to and be finally concluded by the award of said referees, or a majority of them," etc. The failure of the referees to make an award by reason of the inability of any two of them to agree upon an amount brought this proceeding to a stand-still, and there being no provisions in the agreement itself for such a contingency, this bill was filed in the Court below to obtain the relief contemplated by the parties when they agreed upon a reference.

We have no doubt of the power of a Court of equity to grant relief in such a case. The failure of the reference was by no fault of either party, and the case does not come within that line of authorities which hold that where the parties stipulate upon a sufficient consideration that disputes, actual or prospective, shall be submitted to the arbitrament of a particular individual, they are bound by their contract and cannot seek redress elsewhere: Leebrick *v.* Lyter, 3 W. & S., 365; Monongahela Navigation Company *v.* Fenlon, 4 *Id.*, 205; McGheehen *v.* Duffield, 5 Barr, 499. In each of the cases cited, the plaintiff repudiated the tribunal agreed upon and sought to recover by an action at law.

Here the parties submitted in good faith to the tribunal of their own creation, and it was only upon a failure to obtain any result whatever that a court of equity was invoked to enforce the agreement of June 3, 1879. This was not a mere naked submission, which either party could revoke at pleasure at any time before award. It was founded upon a full and sufficient consideration, and is irrevocable. The consideration was, therefore: 1st. The giving by the appellees of their mortgage to the widow, Ann Thomas, to secure her annuity of $300, and the procuring from her a release of her interest in the mortgage in controversy. 2d. The giving by the appellees of their mortgage for $5,000 to the appellant to secure the performance of the award on their part, and 3d, the payment of $100 by Evan W. Thomas, one of the appellees, in advance, for the costs of the reference. It is true the mortgage to secure the annuity was executed several months in advance of the agreement of June 3, but it is averred in the bill, and not denied, that it was prepared in anticipation of such an agreement, ready to be delivered when the same should be consummated, and was not delivered until that time.

The learned master finds: "That by the agreement of

[Bowers v. Schweer.]

June 3, 1879, above mentioned, the mortgage in dispute must be considered to have become due and payable then, and that although the arbitrators were unable to come to any conclusion, yet as the plaintiff had, on the faith of that agreement, provided for the life interest, which all concede Mrs. Ann Thomas had in that mortgage, and have secured her release of the same, and cannot now be restored to their former position, the finding of the Court must be substituted for the expected finding of the arbitrators, and the agreement of the parties, to wit: "That the amount due on the mortgage be ascertained, paid, and the same satisfied, carried into effect."

The parties having been fully heard before a tribunal specially adapted to the investigation and decision of such complicated questions, we are not disposed to disturb the decree unless it be shown that it is erroneous for other reasons. This has not been done.

The amount due upon the mortgage appears to have been correctly ascertained. The note of Evan W. Thomas for $2,000 was manifestly but collateral to the mortgage, and when this latter is paid, no good reason is apparent why the note in question should not be surrendered to the maker. The allowance of costs to the appellant was a matter within the sound discretion of the Court below, and it appears to have been properly exercised.

The decree is affirmed and the appeal dismissed at the costs of the appellant.